UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,     : | |
| : | CIVIL NO. 3:15-cv-01142 (JAM) |
| Plaintiff,     : | |
| V.     : | |
| :  | |
| ROBERT P. NEUBIG and NEUCO CORPORATION,     : | |
| :  | |
| Defendants.     : | SEPTEMBER 25, 2015 |

**ORDER GRANTING MOTION FOR AND ENTRY OF PRELIMINARY INJUNCTION**

This matter comes before the Court on the motion filed by plaintiff National Railroad Passenger Corporation d/b/a Amtrak for a preliminary injunction principally seeking right of access to defendant Robert Neubig's land for purposes of undertaking construction work that is necessary to secure the safety of rail travel on Amtrak's rail line from New Haven, Connecticut to Springfield, Massachusetts.

The Court has reviewed the parties' submissions on this motion, heard evidence, and argument presented at hearings held on September 17 and 24, 2015, and the Court makes the following findings.

1. Amtrak has sued defendants Robert P. Neubig and his company, Neuco Corporation, alleging claims for trespass, negligence, breach of duty to provide lateral support, conversion, statutory theft, and unjust enrichment. This Court has jurisdiction over this matter under 28 U.S.C. § 1349.

2. Defendants have been duly served pursuant to Rule 4 of the Federal Rules of Civil Procedure, and the Court has personal jurisdiction over the defendants in this action.

3. Amtrak alleges that defendants excavated sand and soil from defendant Neubig's property as well as from property owned by Amtrak in North Haven, Connecticut, adjacent to 480 Valley Service Road, without authority or permission from Amtrak. Defendants' own property is adjacent to a major rail corridor that runs north from New Haven to Springfield. Although much of defendants' excavation activity took place on defendant Neubig's land, "[a]djoining owners have a natural right to the lateral support of each other's ground; or, to state it more exactly, while an adjoining owner has the right to excavate his own ground for any lawful purpose, he must do so in such manner that his neighbor's land will not, by its own weight or through the action of the elements, fall into the excavation." *Franc v. Bethel Holding Co.*, 73 Conn. App. 114, 142-43 (2002) (internal quotations omitted).

4. Defendants' excavation activity had the effect of undermining the stability of the railbed under the rail line. This fact has been convincingly established by photographs showing evidence of the deep excavation activity very close to the rail bed as well as Amtrak's expert affidavit evidence and the testimony of Mengto Du, an engineer from the engineering firm of Parsons Brinckerhoff, who has engaged in monitoring and completed a comprehensive report concerning necessary construction activities to safeguard the stability of the railbed in light of defendants' excavation activity.

5. Because of defendants' unauthorized excavation of sand and soil, the long-term safety and stability of the Springfield Line has been impaired, thereby threatening the safety and security of the trains that use the Springfield Line, the passengers and crew in those trains, and

those who reside near the Springfield Line in North Haven, Connecticut. The public has a compelling interest in the assurance of safe rail travel.

6.  To restore the long-term safety and stability of the Springfield Line, Amtrak must be permitted to restore the slope that supports the railbed of the Springfield Line in North Haven where it was excavated by defendants. Amtrak has further established that time is of the essence with respect to conducting this restoration in view of the threat to passenger safety and the necessity to complete restoration work prior to the ground freezing for the winter.

7.  The necessary restoration work cannot be performed from Amtrak's side of the property line without interfering with train travel over the Springfield Line, which would disrupt both passenger and freight traffic and would inconvenience the general public.  The restoration work can be performed from defendant Neubig's property with no disruption to the public or traffic on the Springfield Line.  Because Neubig's property is undeveloped and in an excavated state, Amtrak's access and construction work on Neubig's property is unlikely to cause any harm to that property.

8.  Defendant Neubig has not contested the risk of danger to the Springfield Line or that the work must be done from his property. He has instead requested that he be allowed to perform the restoration work himself. I have considered but decline this option. I am convinced from the testimony and report of engineer Mengto Du that the restoration work involves a high degree of specialization and expertise to ensure the long-term safety of the rail line. Amtrak has contacted and received bids from contractor companies that are capable of conducting this work and on short notice.

9. Although defendant Neubig may have a well-intentioned desire to conduct the restoration work himself, there is nothing to suggest that he has the specialization and expertise that is necessary to do so within the pressing time frame for which the work must be completed. To date, he has failed to retain counsel for himself or his company to defendant this action; moreover, in a related action (*Yanuzzi Group, Inc. v. Armetta, LLC et al.*, 15cv406), he has proved unable to retain counsel following the withdrawal of his initially retained counsel because of his failure to pay his attorney and other troubles with respect to the attorney-client relationship. Even assuming that defendant Neubig had the necessary specialization and expertise, his course of conduct does not offer sufficient assurance that he would reliably conduct the necessary work within the necessary time frame.

10. Of additional concern is that some of the excavation work conducted by defendants also occurred on the adjoining property of another party, GF&G Partnership. Counsel for GF&G has represented that GF&G would not permit defendant Neubig access to its land but would permit an Amtrak contractor access to its land for restoration work.

11. The Court concludes that the requested preliminary injunction is appropriate on the ground that Amtrak has established a strong likelihood of success, potential irreparable harm, and the balance of equities in its favor. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).

**WHEREFORE, the Court hereby ORDERS:**

A.    A temporary access and construction easement is hereby granted to Amtrak in accordance with the terms of the Temporary Access And Construction Easement And Agreement attached hereto as Exhibit 1.

      B.      The easement is subject to all of the protections stated in the Agreement. These include a guarantee to indemnify and save harmless defendants for any damage Amtrak may do to defendants or the property as a result of this temporary easement.

      C.      If defendants have any objections to the terms of this order, they may and should raise them as soon as possible.

      D.      If Amtrak seeks to recoup its construction and restoration costs from defendants, defendants shall have an opportunity to challenge the validity and reasonableness of these costs. The entry of this injunction is without prejudice to defendants' right to contest liability for the conduct that is alleged by Amtrak in its complaint.

      E.      Because Amtrak is a corporation in which the United States owns more than half of the capital stock, no security is required for this preliminary injunction.

It is so ordered.

Dated at New Haven this 25th day of September 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge